**\*NOT FOR PUBLICATION\***

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TAQUAN WILLIAMS | Crim. No. 19-134 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge**:

At his sentencing, defendant Taquan Williams ("Defendant") raised various challenges to the sentence recommended in his Presentence Investigation Report (PSR), following his conviction as a felon in possession of a firearm. As relevant here, the PSR concluded that a state aggravated assault conviction Williams sustained in 2017 qualifies as a "crime of violence," thereby increasing Williams' base offense level under the United States Sentencing Guidelines (the "Guidelines"). Williams contends that his aggravated assault conviction does not qualify as a crime of violence under certain decisions in this Circuit. The Court held a sentencing hearing on June 2, 2022, at which the Court rejected Williams' position but reserved the right to issue a written opinion. For the reasons set forth herein, the Court concludes that Williams' prior aggravated assault conviction under N.J.S.A. 2C:12-1(b)(4) qualifies as a crime of violence.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

On October 8, 2021, a jury convicted Williams of violating 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. ECF No. 686. The Probation Office submitted a PSR that recommended a total offense level of 28 for Williams' conviction under section 922(g)(1). *See* ECF No. 730, PSR ¶¶ 281–303. The total offense level was based in part on U.S.S.G. § 2K2.1(a)(3), which provides for

a base offense level of 22 "if (A) the offense involved a . . . semiautomatic firearm that is capable of accepting a large capacity magazine[,] . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." *See* PSR ¶¶ 294, 303. As relevant here, the PSR concluded that Williams' 2017 conviction for aggravated assault with a firearm in the New Jersey Superior Court, Mercer County, qualifies as a "crime of violence." PSR ¶ 315; *see also* PSR Addendum at pp. 70–71. The PSR states that "[a]ccording to the complaint, Williams fired a handgun from a moving vehicle at an individual standing" on a street corner in Trenton, New Jersey. PSR ¶ 315. Williams was convicted of aggravated assault for unlawfully pointing a firearm at another, for which he served the maximum 18-month term. *See id.*

Williams submitted a Sentencing Memorandum objecting, *inter alia*, to the conclusion that his 2017 aggravated assault conviction qualifies as a "crime of violence" under the Guidelines. He cites to decisions in this Circuit holding that certain forms of aggravated assault in New Jersey do not qualify as crimes of violence. *See* Defendant's Sentencing Memorandum ("Def. Memo.") at 5 (citing *United States v. Scott*, Crim. No. 18-547, 2021 WL 6805797, at *3–4 (D.N.J. Dec. 6, 2021); *United States v. Edmonds*, Crim. No. 18-00378, 2020 WL 1663362, at *1–9 (M.D. Pa. Apr. 3, 2020)). The Government responds that the weight of authority in other circuits holds that firearm-pointing offenses in other states, which are similar to the statutory offense in New Jersey, qualify as crimes of violence. *See* Government's Memorandum of Law in Support of Step One Offense Level Calculations ("Govt. Memo.") at 8–9. The Government also emphasizes that *Scott* and *Edmonds* turned on the fact that the relevant aggravated assault provisions at issue in those cases contained a recklessness *mens rea*, meaning that those offenses cannot qualify as crimes of violence under Supreme Court precedent. *See Id.* at 9 (citing *Borden v. United States*, 141 S. Ct. 1817 (2021)). By

contrast, Williams was convicted under N.J.S.A. 2C:12-1(b)(4), which requires a "[k]nowing[]" violation. *See id.* at 10.

At the sentencing hearing, the Court concluded that Williams' 2017 aggravated assault conviction for unlawfully pointing a firearm qualifies as a crime of violence, which the Court factored into Williams' base offense level pursuant to U.S.S.G. § 2K2.1(a)(4).[1] The Court sets forth its reasoning in this Opinion.

## II.   LEGAL STANDARD

The guideline applicable to Williams' sentence, U.S.S.G. § 2K2.1, incorporates the definition of a "crime of violence" provided under section 4B1.2. *See* U.S.S.G. § 2K2.1, Application Note 1. Under that definition, a "crime of violence" is a crime that either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "elements clause"), or (2) is, among other crimes, "aggravated assault" (the "enumerated clause"). U.S.S.G. § 4B1.2(a). Here, the Government argues that Williams' aggravated assault conviction is a crime of violence only under the elements clause.

In determining "whether a previous conviction," including one for a crime of violence, "is a predicate offense pursuant to the elements clause," courts typically apply a "categorical approach," under which a court must "compar[e] the [G]uidelines' definition of 'crime of violence' to the elements of the statute under which the defendant was previously convicted." *United States v. Abdullah*, 905 F.3d 739, 744 (3d Cir. 2018) (quoting *United States v. Wilson*, 880 F.3d 80, 83 (3d

---

[1] Section 2K2.1(a)(4) provides for a base offense level of 20 if, *inter alia*, "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." The Court calculated a base offense level of 20 pursuant to section 2K2.1(a)(4) rather than a base offense level of 22 under section 2K2.1(a)(3), as the PSR had recommended, because the Court concluded that Williams' offense did not involve a "semiautomatic firearm that is capable of accepting a large capacity magazine," which is a requirement under section 2K2.1(a)(3).

3

Cir. 2018)). If "the use, attempted use, or threatened use of physical force against another person is categorically an element of the offense of conviction, . . . then the statute proscribes a predicate crime of violence within the meaning of the Guidelines." *United States v. Ramos*, 892 F.3d 599, 606 (3d Cir. 2018). The court must "ignore the actual manner in which the defendant committed the prior offense" and "presume that the defendant did so by engaging in no more than 'the minimum conduct criminalized by the state statute.'" *Id.* (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

"[I]f the statute of conviction is divisible because it sets out alternative criminal offenses," courts "may apply what is called the 'modified categorical approach.'" *Abdullah*, 905 F.3d at 744 (citing *Ramos*, 892 F.3d at 606–08). Under that approach, the court must first attempt to identify the specific subsection under which the defendant was convicted, and then, second, apply the categorical approach to determine whether that offense qualifies as a crime of violence under the Guidelines. *Abdullah*, 905 F.3d at 745. "[T]o identify the specific statutory provision that served as the basis for the defendant's earlier conviction," the court may "look beyond the statute of conviction to documents such as 'the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judgment to which the defendant assented.'" *Id.* at 744 (quoting *Ramos*, 892 F.3d at 607). In *Abdullah*, the Third Circuit held that N.J.S.A. 2C:12-1(b), the statute underlying Williams' 2017 aggravated assault conviction, is divisible such that the "modified categorical approach" applies in determining whether a particular charge qualifies as a crime of violence. *Id.* at 745–46. Accordingly, the Court will apply the modified categorical approach, here.

### III. DISCUSSION

#### A. Crime of Conviction

There is no dispute that Williams pled guilty to a violation of N.J.S.A. 2C:12-1(b)(4). That provision prohibits "[k]nowingly under circumstances manifesting extreme indifference to the value of human life point[ing] a firearm, as defined in subsection f. of N.J.S.2C:39-1, at or in the direction

4

of another, whether or not the actor believes it to be loaded." Violating Section (b)(4) is a fourth-degree felony. *See* N.J.S.A. 2C:12-1(b). During the plea colloquy, upon which the Court may rely under the modified categorical approach, *Abdullah*, 905 F.3d at 744, the Superior Court judge confirmed with Williams that he was "pleading guilty to that one count accusation charging [him] with pointing a firearm, aggravated assault by pointing a firearm in the fourth degree." *See* Govt. Memo. Ex. 1, *State v. Williams*, No. 17-07-00445, Transcript of Plea ["Plea Tr."] 7:21–8:4 (N.J. Super. Ct. Law Div. July 24, 2017). Williams' attorney also confirmed that Williams "actually point[ed] [a particular] handgun out the window at certain persons on the street" and that he "did so knowingly and under circumstances manifesting extreme indifference to the value of human life." *See* Plea Tr. 12:15–23. Thus, although there is no charging document stating that the State charged Williams under N.J.S.A. 2C:12-1(b)(4), the circumstances surrounding his plea demonstrate that he was convicted under that provision.

The Court will therefore consider whether a violation of N.J.S.A. 2C:12-1(b)(4) "qualifies as a 'crime of violence' under the elements clause" by analyzing whether the "use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a), is an element of the statute. *See United States v. Randolph*, Crim. No. 18-380, 2019 WL 2067542, at *3 (D.N.J. May 10, 2019) (citing *United States v. Brown*, 765 F.3d 185, 189 (3d Cir. 2014)). Because the minimum conduct required to violate the statute, *Ramos*, 892 F.3d at 606, involves "pointing" a firearm at another, not necessarily firing the weapon, *see* N.J.S.A. 2C:12-1(b)(4), the relevant inquiry is whether a violation entails the "threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a).

B.   **Threatened Use of Force as a Statutory Element**

To convict a defendant under N.J.S.A. 2C:12-1(b)(4), the prosecution must prove two elements: (1) that "the defendant knowingly pointed a firearm at or in the direction of another whether

5

or not the defendant believed it to be loaded;" and (2) that "the defendant acted under circumstances manifesting extreme indifference to the value of human life." *See* New Jersey Courts, *Model Criminal Jury Charges: N.J.S.A. 2C:12-1b(4)*, https://www.njcourts.gov/attorneys/assets/criminalcharges/assault4.pdf [last visited June 15, 2022]. Under the second element, the prosecution must prove that "the defendant acted in a way which showed that [the] defendant did not care that someone might be killed," which "does not focus on [the] defendant's state of mind, but rather on the circumstances under which . . . the defendant acted." *Id.* Although not stated explicitly in the statute, self-defense and defense of others are valid justifications that may preclude liability for assault. *See State v. Bilek*, 308 N.J. Super. 1, 6–14 (App. Div. 1998) (holding that on charges for a violation of N.J.S.A. 2C:12-1(b)(4), defendant was entitled to a self-defense instruction, and that where the facts allow, defendant is entitled to the broader self-defense instruction under N.J.S.A. 2C:3-4(c) applicable to defense against "an intruder who is unlawfully in a dwelling" rather than the narrower general self-defense instruction under N.J.S.A. 2C:3-4(a)); *State v. Montague*, 55 N.J. 387, 403–05 (1970) (citing *State v. Chiarello*, 69 N.J. Super. 479 (App. Div. 1961)) (explaining that defense of others is a valid defense to assault).

Based on the text of the statute and Guidelines, as well as case law interpreting similar pointing offenses, the Court concludes that violating N.J.S.A. 2C:12-1(b)(4) is a crime of violence under the Guidelines.

### 1. *Text of the Relevant Statute and Guideline*

The text of N.J.S.A. 2C:12-1(b)(4) and the relevant guideline supports the conclusion that the prosecution must prove the "threatened use of physical force against . . . another," U.S.S.G. § 4B1.2(a), as an element of the offense. A "threat" is "[a] communicated intent to inflict harm or loss on another," or "a declaration, express or implied, of an intent to inflict loss or pain on another." *See* Threat, *Black's Law Dictionary* (11th ed. 2019) (definition #1); *see also United States v. Delgado-*

6

*Sanchez*, 849 F.3d 1, 10 (1st Cir. 2017); *United States v. White*, 258 F.3d 374, 383 (5th Cir. 2001). The elements of N.J.S.A. 2C:12-1(b)(4) align with this definition because the prosecution must prove not only that the defendant pointed a firearm at another person, but also that the defendant did so "under circumstances manifesting extreme indifference to the value of human life." N.J.S.A. 2C:12-1(b)(4). To "manifest" is "[t]o make (a quality, fact, etc.) evident to the eye or to the understanding" or "to show plainly, disclose, [or] reveal," see Manifest, *Oxford English Dictionary Online* (verb, definition #1), https://www.oed.com/view/Entry/113484?rskey=SIbL2Z&result=3&isAdvanced=false#eid [last visited June 15, 2022], which is consistent with the requirement of a "communicat[ion]" or "declaration" under the definition of a threat. Likewise, the requirement that a defendant "knowingly" point a firearm under circumstances that convey "extreme indifference to the value of human life" is consistent with the requirement that a threat communicate or declare an "intent" to "harm . . . another."

Pointing a firearm at another person also necessarily entails a threat to use "physical force." As used in section 4B1.2, "[p]hysical force" is "violent force," which is "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Section 2C:12-1(b)(4) presents an interpretive difficulty insofar as the statute applies "whether or not the [individual pointing the firearm] believes it to be loaded," and an individual can violate the statute by pointing an unloaded firearm. See *State v. Jules*, 345 N.J. Super. 185, 191 (App. Div. 2001) (citing *State v. Bill*, 194 N.J. Super. 192, 196–98 (App. Div. 2001)). If the firearm is unloaded, the question arises whether it is "capable of causing physical pain." *Johnson*, 559 U.S. at 140. But pointing even an unloaded firearm at another person involves the "threatened" use of "physical force." See *United States v. King*, 673 F.3d 274, 279–80 (4th Cir. 2012). A firearm is an instrument that is capable of firing a bullet, N.J.S.A. 2C:39-1(f), and is therefore "capable of causing physical pain or injury."

7

*Johnson*, 559 U.S. at 140. And because an intended target will not know whether a firearm pointed in his or her direction is loaded, the message conveyed is an intent or willingness to use an instrument capable of causing physical pain against the intended target. *See Lassend v. United States*, 898 F.3d 115, 128–30 (1st Cir. 2018) (surveying cases and holding that "display[ing] . . . what appears to be a . . . firearm," even if it is not in fact a functional weapon, satisfies *Johnson*'s "violent-force requirement" because the relevant inquiry is whether the victim would have "reasonably perceived a threat of bodily harm, not . . . whether the defendant could have carried out that threat").

Two other points of textual ambiguity arise, but neither alters my conclusion. First, some courts have questioned whether a defendant could "threaten[]" the use of force by pointing a gun at another in a joking manner, which is conduct certain pointing statutes conceivably encompass. *See, e.g., Delgado-Sanchez*, 849 F.3d at 10; *White*, 258 F.3d at 383–84. Although no New Jersey court has addressed this issue, there is a reasonable inference that N.J.S.A. 2C:12-1(b)(4) excludes liability for "pointing a firearm . . . in obvious jest." *White*, 258 F.3d at 383–84. To convict a defendant under N.J.S.A. 2C:12-1(b)(4), the jury must find that the defendant pointed the firearm "under circumstances manifesting extreme indifference to the value of human life," which means "the defendant acted in a way which showed that [the] defendant did not care that someone might be killed." *See Model Criminal Jury Charges: N.J.S.A. 2C:12-1b(4)*. One cannot point a firearm at another in an obviously joking manner while simultaneously demonstrating "extreme indifference" as to whether one kills that individual.

Second, courts have questioned whether pointing statutes may cover circumstances in which a defendant points a firearm at another without the targeted individual noticing, which, according to these courts, may not necessarily qualify as a "threat" given the absence of communication to another

8

person. *See, e.g.*, *Delgado-Sanchez*, 849 F.3d at 10; *White*, 258 F.3d at 383–84.[2] A threat is either a "communicated" intent, or a "declaration" of intent, to inflict harm on another. *See* Threat (definition #1) (emphasis added); *see also Delgado-Sanchez*, 849 F.3d at 10 (discussing definition of "[t]hreat" in Black's Law Dictionary); *White*, 258 F.3d at 383–84 (same). To "communicate" is "[t]o impart (information, knowledge, or the like) (*to* a person . . .)[,] . . . to convey [or] express," or "to give an impression of [or] put across." *See* Communicate, *Oxford English Dictionary Online* (verb, definition #1), https://www.oed.com/view/Entry/37308?rskey=0X9ll2&result=2&isAdvanced=false#eid (emphasis in original) [last visited June 15, 2022]. *Delgado-Sanchez* and *White* appear to reason that one cannot "communicate" one's intent without a recipient perceiving the intent conveyed, which could occur when an individual does not notice a firearm pointed in his or her direction. But even assuming these cases correctly interpret "communicate," a threat can also be a "declaration." *See* Threat (definition #1). As relevant here, a "declaration" is "[t]he action of stating, telling, setting forth, or announcing openly, explicitly or formally," or a "positive statement or assertion." *See* Declaration, *Oxford English Dictionary Online* (noun, definition #3(a)), https://www.oed.com/view/Entry/48251?redirectedFrom=declaration#eid [last visited June 15, 2022]. One can make a "declaration" without an intended recipient noticing or comprehending the

---

[2] No case in New Jersey decides directly whether an individual can violate N.J.S.A. 2C:12-1(b)(4) in circumstances where the target is not aware of the firearm pointed in his or her direction. Traditionally, assault requires "the *fear* of imminent bodily harm or death," *State v. Jones*, 160 N.J. Super. 146, 148 (App. Div. 1978) (emphasis added) (interpreting previous statute penalizing "assault with an offensive weapon"), suggesting that the victim must become aware of the threatened harm. However, the Supreme Court of New Jersey upheld instructions to a jury under N.J.S.A. 2C:12-1(b)(4) that, in deciding whether a defendant pointed a firearm in the direction of another, the jury must base its decision on the surrounding circumstances and not on the perceptions "of the people who are apparently the victims." *State v. Clausell*, 121 N.J. 298, 318 (1990). Nevertheless, the Court need not resolve this ambiguity here because, as explained *infra*, a statute can include the "threatened" use of force as an element even if the statute does not require a victim to perceive the defendant's intent to inflict harm.

contents thereof. Thus, under the latter definition, one can "threaten[]" to "use of physical force against . . . another," U.S.S.G. § 4B1.2(a), by pointing a firearm at an individual in "circumstances manifesting extreme indifference" to "human life," even if the targeted individual is not aware of the firearm.[3]

    2.    *Case Law*

While the Third Circuit has not decided this precise issue, the weight of authority in other circuits holds that statutes which prohibit pointing a firearm at another person generally qualify as crimes of violence under the elements clause. *See United States v. Hataway*, 933 F.3d 940, 945–46 (8th Cir. 2019) (Arkansas and South Carolina statutes that generally prohibit pointing a firearm at another person qualify, respectively, as a violent felony under the Armed Career Criminal Act (ACCA) and a crime of violence under the Guidelines);[4] *United States v. Collins*, 811 F.3d 63, 66–67 (1st Cir. 2016) (Maine statute prohibiting "criminal threatening with a dangerous weapon" constitutes crime of violence under the Guidelines); *Delgado-Sanchez*, 849 F.3d at 10–11 (Puerto Rico statute prohibiting intentionally pointing a weapon at another person qualifies as crime of violence under the Guidelines); *United States v. Maid*, 772 F.3d 1118, 1120–21 (8th Cir. 2014) (Iowa

---

[3] *Delgado-Sanchez* posits that U.S.S.G. § 4B1.2(a) may adopt a separate definition of a "threat": "the creation of some 'thing that might well cause harm.'" *Delgado-Sanchez*, 849 F.3d at 10 (citing Threat, *Black's Law Dictionary* (10th ed. 2014) (definition #3)). Under this definition, the court concluded that merely pointing a firearm at a person qualifies as the "threatened use of physical force" even if the victim does not notice the firearm pointed in his or her direction. *See id.* The court concluded that the district court did not clearly err in finding that the statute at issue contained a crime of violence because there was no indication that the Guidelines omit the latter definition of a threat. *Id.* Although I rely principally on the definition of a threat involving a "declaration" of intent to inflict harm, *see* Threat (definition #1), I agree with *Delgado-Sanchez* that the definition involving "some 'thing that might well cause harm'" provides an alternative basis for my conclusion that one can threaten the use of force even if the intended victim does not notice the threatening conduct.

[4] The definitions of "violent felony" in the ACCA and "crime of violence" in the Guidelines both include an offense that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i); USSG § 4B1.2(a)(1).

statute prohibiting "[i]ntentionally point[ing] any firearm toward another" or "display[ing] in a threatening manner any dangerous weapon toward another" qualifies as crime of violence under the Guidelines); *King*, 673 F.3d at 280 (South Carolina statute prohibiting pointing firearm at another qualifies as crime of violence under the Guidelines); *but see White*, 258 F.3d at 382–84.

N.J.S.A. 2C:12-1(b)(4) is particularly similar to the Arkansas statute at issue in *Hataway*, which constitutes a violent felony under ACCA. Under the Arkansas statute, a person commits "aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely . . . [d]isplays a firearm in such a manner that creates a substantial danger of death or serious physical injury to another person." Ark. Code Ann. § 5-13-204(a). Both N.J.S.A. 2C:12-1(b)(4) and the Arkansas statute contain a knowing or purposeful, as opposed to merely reckless, *mens rea*, and both require "circumstances manifesting extreme indifference to the value of human life." Unlike New Jersey, Arkansas also requires that the defendant point the firearm "in such a manner that creates a substantial danger of death or serious physical injury." *Id.* But *Hataway* concluded that the Arkansas statute qualifies as a crime of violence based on precedent holding that "'[i]ntentionally point[ing] any firearm toward another'" by itself constitutes a "threatened use of physical force." 933 F.3d at 945 (quoting *Maid*, 772 F.3d at 1120–21). And, as I have emphasized, N.J.S.A. 2C:12-1(b)(4) requires more than knowingly pointing a firearm at another. The defendant must also do so in circumstances showing indifference to human life.

N.J.S.A. 2C:12-1(b)(4) also contains similar elements to those under the South Carolina statute at issue in *King*, 673 F.3d at 279. The South Carolina statute "contains three elements: '(1) pointing or presenting; (2) a loaded or unloaded firearm; (3) at another.'" *Id.* (quoting *State v. Burton*, 356 S.C. 259, 264 (2003)). Further, under state court precedent, the statute also "requires that the act of pointing or presenting a firearm be committed in a threatening manner." *Id.* (citing *In re Spencer R.*, 387 S.C. 517, 523 (App.2010)). Like N.J.S.A. 2C:12-1(b)(4), the South Carolina statute covers

11

circumstances where an individual points an unloaded firearm at another. And, for the reasons explained in the Court's textual analysis *supra*, New Jersey's requirement that the defendant point a firearm "under circumstances manifesting extreme indifference" to human life is analogous to South Carolina's requirement that the defendant point a firearm "in a threatening manner." *See King*, 673 F.3d at 279.

New Jersey's pointing statute is distinguishable from the Texas statute at issue in *White*, which did not cover a crime of violence under the Guidelines. Under the Texas statute, "[a] person commits an offense if he recklessly engages in conduct that places another in imminent danger of serious bodily injury," and "[r]ecklessness and danger are presumed if the actor knowingly pointed a firearm at or in the direction of another whether or not the actor believed the firearm to be loaded." *White*, 258 F.3d at 381 (citing Texas Penal Code section 22.05(a)–(b)). The court concluded that the "threatened use of physical force" is not an element of this offense. *Id.* at 383–84. As the court reasoned, "[a] threat imports '[a] communicated intent to inflict physical or other harm' and is 'distinguished from words uttered as mere . . . idle talk or jest.'" *Id.* at 383 (citing *Black's Law Dictionary* (6th ed. 1990) at 1480). Because pointing a firearm at a person "in obvious jest" falls within the statute but would not necessarily "communicate[] intent to inflict" harm, the statute did "not have 'as an element' that the defendant 'threatened use of a deadly weapon' against the victim." *Id.* at 383–84. But unlike the Texas statute, New Jersey's statute requires that the defendant pointed a firearm at another "under circumstances manifesting *extreme indifference to the value of human life*." N.J.S.A. 2C:12-1(b)(4) (emphasis added). For the reasons discussed *supra*, such circumstances amount to a "threatened use of physical force against . . . another." U.S.S.G. § 4B1.2(a).

Two decisions in this district—one by this Court—conclude that different forms of aggravated assault in New Jersey are not a crimes of violence. One decision addressed a defendant's conviction under N.J.S.A. 2C:12-1(b)(1), under which a person is guilty of second-degree aggravated

12

assault if he "[a]ttempts to cause serious bodily injury to another, or causes injury purposely or knowingly or under circumstances manifesting extreme indifference to the value of human life *recklessly* causes such injury." *See Scott*, 2021 WL 6805797, at *3–4 (emphasis added). The court held that this provision does not cover a crime of violence under the enumerated clause because, as the Ninth Circuit had concluded, "'a substantial majority of U.S. jurisdictions require more than extreme indifference recklessness to commit aggravated assault.'" *Id.* at *3 and n.3 (citing *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1085–86 (9th Cir. 2015)); *see also Edmonds*, 2020 WL 1663362, at *2–6 (same). Similarly, this Court addressed a defendant's conviction under N.J.S.A. 2C:12-1(b)(7), pursuant to which a person is guilty of third-degree aggravated assault if he "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the value of human life *recklessly* causes such significant bodily injury." *See Randolph*, 2019 WL 2067542, at *1. The Court held that this offense is not a crime of violence under the elements clause because, pursuant to Third Circuit precedent, a "conviction based on a *mens rea* lower than intent," such as recklessness, "is not sufficient." *Id.* at *3–7.

However, *Scott* and *Randolph* are distinguishable because the statute at issue here requires "knowing[]" conduct, *see* N.J.S.A. 2C:12-1(b)(4), not simply recklessness, and therefore is not disqualified as a crime of violence based on the *mens rea*. *Cf. Borden*, 141 S. Ct. at 1821–22 (holding that an offense that "requires only a *mens rea* of recklessness—a less culpable mental state than purpose or knowledge"—does not qualify as a "violent felony" under ACCA); *Popal v. Gonzales*, 416 F.3d 249, 254–55 (3d Cir. 2005) (concluding that "[b]ecause Pennsylvania simple assault requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence"); *United States v. Simmons*, 917 F.3d 312, 318 (4th Cir. 2019), as amended (Mar. 6, 2019) (concluding that a state aggravated assault charge that "can be committed with a *mens rea* equal to or less than recklessness

. . . is categorically broader than the generic offense of aggravated assault and cannot be deemed a 'crime of violence' under the [enumerated offense clause of the] Sentencing Guidelines"); *id.* at 321 (concluding that the statute does not qualify as a crime of violence under the elements clause "[f]or largely the same reason" that it does not so qualify under the enumerated clause).[5]

## IV. CONCLUSION

For the reasons set forth above, the Court concludes that the offense proscribed in N.J.S.A. 2C:12-1(b)(4) qualifies as a "crime of violence" under the Guidelines.

Date: June 21, 2022

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
U.S. Chief District Judge

---

[5] N.J.S.A. 2C:12-1(b)(4) is a fourth-degree felony, whereas the provisions at issue in *Scott* and *Randolph* contain felonies in the second and third degrees, respectively. *See Scott*, 2021 WL 6805797 at *3–4; *Randolph*, 2019 WL 2067542, at *1. But there is no authority holding that the degree of a felony offense dictates whether it can qualify as a crime of violence.